# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| TROY YATES, MIKE WILLS, and OTHER SIMILARLY SITUATED INDIVIDUALS, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 18-cv-6001 |
| v. | ) ) | Judge Robert M. Dow, Jr. |
| H&M INTERNATIONAL TRANSPORTATION, INC, DAVE TURBYFILL, and other UNNAMED PERSONS, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION & ORDER

Plaintiffs Troy Yates and Mike Wills, on behalf of themselves and all other persons similarly situated, bring this putative class-action against H&M International Transportation, Inc. ("H&M"), Dave Turbyfill, and unknown Officers and Directors of H&M for racial discrimination under various sections of the Civil Rights Act of 1866, specifically, 42 U.S.C. § 1981 (Count I), § 1985 (Count II), and § 1986 (Count III). Currently before the court is H&M's partial motion to dismiss [9] Counts II and III as well as its supplemental motion to dismiss [17] Count I, both pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, the Court grants both motions. Count I is dismissed with prejudice as to Yates and Wills. Counts II and III are dismissed without prejudice. Pursuant to the Seventh Circuit's instructions in *Matz v. Household Int'l Tax Reduction Inv. Plan*, 774 F.3d 1141, 1144–45 (7th Cir. 2014), and *Robinson v. Sheriff of Cook Co.*, 167 F.3d 1155, 1157–58 (7th Cir. 1999), purported-class counsel is given until August 16, 2019 to file a motion to substitute plaintiffs as to Count I and/or an amended complaint as to all counts consistent with this opinion. The case is set for further status on August, 21, 2019 at 9:00 a.m.

## I.    Background[1]

Yates and Wills are African-American men employed, or formerly employed, by H&M. [1, ¶ 4.]  H&M employed Yates from 2015 to early 2016.  [*Id*. ¶ 5.]  Wills joined H&M in September 2014 and continues to work there today.  [*Id*. ¶ 6.]  Defendant Turbyfill is an Assistant Terminal Manager for H&M.  [*Id*. ¶ 16.]

Plaintiffs allege that H&M engaged in a "pay-to-play" scheme—overseen by Turbyfill— in which H&M employees offered jobs to African-American men in exchange for payments of between $1,000 and $2,500.  [*Id*. ¶¶ 11, 16.]  No non-African-Americans were allegedly required to pay to gain employment at H&M.  [*Id*. ¶ 28.]  In fact, Plaintiffs allege, H&M has a history of such schemes.  For example, prior to the one overseen by Turbyfill, a different H&M employee offered African-American men jobs for cash and then fired those hired one day shy of their ninetieth work day, thus preventing their union rights from vesting.  [*Id*. ¶¶ 11–13.]

With regard to the current scheme, Plaintiffs allege that in December 2014, Mr. Gartnez Lowe approached Yates and invited him to apply for employment at H&M.  [*Id*. ¶¶ 17, 18.]  At that time, Lowe told Yates that Turbyfill required a $1,000 payment to get the job: a $500 deposit with his application and $500 at his start date.  [*Id*. ¶ 19.]  Yates then submitted his application and the $500 deposit to Lowe "one week before Christmas 2014."  [*Id*. ¶ 20.]  Yates subsequently reported for work at H&M on January 6, 2015 without ever having had an interview.  [*Id*. ¶ 21.]  Plaintiffs allege that other individuals applied with Yates, but none of them either paid Lowe or were hired.  [*Id*. ¶ 22.]  After Yates complained about this practice, H&M allegedly fired him.  [*Id*.

---

[1] For purposes of the motion to dismiss, the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor.  *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

¶ 23.]   Yates subsequently filed a Charge of Discrimination with the Equal Employment Opportunity that remains pending.  See [9-1].

Wills allegedly suffered a similar experience.  See generally [1].  In late summer 2014, an unnamed acquaintance of Turbyfill approached Wills.  [1, ¶ 24.]  That individual informed Wills that he could get Wills a job at H&M for $2,000.  [*Id*. ¶ 25.]  Wills paid the money along with his application and H&M subsequently hired him on September 24, 2014.  [*Id*. ¶ 27.]

Plaintiffs initiated this lawsuit on August 31, 2018.  See generally [1].  Plaintiffs assert that Defendants' alleged "pay-to-play" scheme targeting African-Americans violated federal anti-discrimination law, specifically 42 U.S.C. § 1981 (Count I).  [1, ¶ 34.]  Plaintiffs also assert that H&M employees and unnamed non-employees engaged in a conspiracy to deny African-American applicants and employees equal rights under the law in violation of 42 U.S.C. § 1985 (Count II). [1, ¶ 39.]   Finally, Plaintiffs assert that the unnamed Officers and Directors of H&M had knowledge of the alleged scheme perpetuated by Turbyfill and that the unnamed H&M Officers and Directors neglected to prevent this scheme from occurring in violation of 42 U.S.C. § 1986 (Count III).  [1, ¶¶ 44, 45.]  In addition to their own claims, Plaintiffs seek to represent a class of similarly situated African-American H&M employees and applicants from August 2014 to present. [*Id*. ¶ 30.]

H&M brought its partial motion to dismiss [9] on November 2, 2018 seeking to dismiss Counts II and III on statute of limitations grounds.  See [9, at 3–5].  After reviewing Plaintiffs' response to that motion, H&M requested leave to file a supplemental motion to dismiss in its reply, arguing that Plaintiff had demonstrated that Count I was untimely as well.  See [17, at 2].  Having granted that motion [24], the parties have briefed that issue as well and the Court now resolves both motions.

## II. Standard

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plan statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations" in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). Evaluating whether a claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

## III.     Analysis[2]

### A.     Count I

Defendants argue the Court must dismiss Count I as untimely under the applicable statute of limitations.   Settled Seventh Circuit law holds that a statute of limitations defense is an affirmative defense that a complaint need not anticipate or allege facts to defend against.   *U.S. Gypsum Co. v. Indiana Gas Co., Inc. et al.,* 350 F.3d 623, 628 (7th Cir. 2003); *see also Barry Aviation, Inc. v. Land O' Lakes Mun. Airport Comm'n.,* 377 F.3d 682, 688 (7th Cir. 2004) (finding that the resolution of the statute of limitations comes after the complaint stage).   The exception to this rule arises when the "allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense."   *Brooks v. Ross,* 578 F.3d 574, 579 (7th Cir. 2009).   In *Brooks*, for example, the Seventh Circuit concluded that it was appropriate to consider the statute of limitations at the motion to dismiss stage because "the relevant dates [we]re set forth unambiguously in the Complaint" and because the plaintiff's one substantive response to the defense was inapposite.   *Id.* Here, while Plaintiffs note that courts generally address statutes of limitations defenses after at least some discovery, they primarily argue that their claims are timely if analyzed under the proper statute of limitations.   Because the relevant dates were "set forth unambiguously in the Complaint," the Court will determine what statute of limitations applies.

42 U.S.C. § 1981 does not include a statute of limitations.   When a federal law lacks a statute of limitations, the Supreme Court has held that "Congress intended that the courts apply the most closely analogous statute of limitations under state law."   *Reed v. United Transp. Union*,

---

[2] It appears that neither Turbyfill nor the unnamed H&M Officers and Directors have been served or appeared in this matter.  However, to the extent that the arguments H&M presents apply with equal force to Turbyfill and the unnamed Defendants, the Court will grant the relief H&M seeks to them as well.  See, e.g., *Anderson Die Castings, Inc. v. Berlow*, 1991 WL 74595, at *3 (N.D. Ill. May 3, 1991) (dismissing the remaining defendants given that the moving defendants' argument applied with equal force to them).

488 U.S. 319, 323 (1989). For § 1981, that is the statute of limitations for personal injury claims. *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 661–62 (1987) (noting that although § 1981 provides protection from discrimination in the economy, it still is a "part of a federal law barring racial discrimination" which "is a fundamental injury to the individual rights of a person" and thus personal injury law is the most analogous). In Illinois, the statute of limitations for personal injury claims is two years. 735 ILCS 5/13-202; see also *Smith v. Chicago Heights*, 951 F.2d 834, 839 (7th Cir. 1992) (applying Illinois' two-year of statute of limitations for personal injury claims to a § 1981 claim). Thus, at first glance, it appears that a plaintiff must file his § 1981 claim within two years of its accrual.

In 1990, however, Congress enacted a "catch-all" statute of limitations for all federal laws without an explicit limitations period: 28 U.S.C. § 1658. Section 1658 provides that "a civil action arising under an Act of Congress enacted after the date of the enactment of this section[—December 1, 1990—]may not be commenced later than 4 years after the cause of action accrues." 28 U.S.C. § 1658. When enacted, this "four-year catch-all" did not apply to claims under 42 U.S.C. § 1981, which significantly predates § 1658. Less than a year later, however, Congress amended § 1981 through the Civil Rights Act of 1991, which expanded the definition of the phrase "make and enforce contracts" to include the "termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). Because this amendment arose after § 1658's enactment, many courts questioned whether the newly enacted "four-year catch-all" statute of limitations applied to all § 1981 claims or if the states' statutes of limitations remained applicable to at least some subset of § 1981 claims.

The Supreme Court resolved that question in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004). Justice Stevens, writing for the majority, held that if a § 1981 claim alleged a violation

of the pre-1990 version of § 1981, or any law for that matter, then the "borrowed" state statute of limitations would still apply. *Id*. at 382. If a plaintiff's claim arose out of the post-1990 version of § 1981, however, then § 1658's "four-year catch-all" statute would apply. *Id*. Thus, to determine if Plaintiffs' claims are subject to a two or four-year statute of limitations, the Court must determine whether Plaintiffs' § 1981 claim was cognizable before the Civil Rights Act of 1991.

Prior to the Civil Rights Act of 1991, § 1981 did "not apply to conduct which occurs after the formation of a contract and does not interfere with the right to enforce established contract obligations." *Patterson v. McLean Credit Union*, 491 U.S. 164, 171 (1989). In other words, pre-1991 plaintiffs could not state a claim under § 1981 for post-formation conduct unrelated to that contract's enforcement; rather, Title VII of the Civil Rights Act of 1964 provided the proper cause of action in employment related actions. *Id*. at 180. However, the Civil Rights Act of 1991 amended § 1981 to explain that the phrase "make and enforce contracts" included the "termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). In light of that revision, the Seventh Circuit has explained that § 1981 claims for racial discrimination in employment arising after the formation of an employment contract are subject to § 1658's four-year federal statute of limitation. *Dandy v. UPS*, 388 F.3d 263, 269 (7th Cir. 2004) ("[Plaintiff's] § 1981 claims are subject to § 1658 4-year statute of limitations because they are premised on conduct which took place after the formation of her employment contract.").

Thus, whether Plaintiffs' claims are subject to a two or four-year statute of limitations turns on whether the actions underlying their claims occurred before or after the formation of their employment contracts. H&M argues that Plaintiffs' § 1981 claims are in essence discriminatory

hiring practices claims—a quintessential pre-formation claim—and are therefore subject to Illinois's two-year statute of limitations for personal injury claims. [34, at 5.] Plaintiffs respond that their § 1981 claims rest on the actual collection of the money, Wills' and Yates' placement on the payroll, and the "early termination" scheme—all of which, they argue, occurred after the formation of their employment contact. Thus, according to Plaintiffs, § 1658's four-year statute of limitations should apply. [31, at 6.]

Plaintiffs' contention that their § 1981 claims are premised on post-formation conduct simply is not tenable. Plaintiffs' claims are clearly based on discriminatory hiring practices, which the Seventh Circuit has explicitly described as preformation conduct and thus subject to Illinois' two-year statute of limitations for personal injuries. See *Rainey v. UPS*, 543 Fed. Appx. 606, 608 (7th Cir. 2013) ("Rainey alleges that unlawful discrimination prevented the making of an employment contract, and for claims of discrimination in hiring arising in Illinois, a two-year statute of limitations governs."). Plaintiffs' claims center on the allegation that H&M employees singled out African-American men and compelled them to pay to form an employment contract with H&M, while no non-African-Americans were required to do so. See generally [1]. Plaintiffs' request to represent a class that includes applicants to H&M, as well as current H&M employees who paid to receive their positions in the first place, see [1, ¶ 30], supports this conclusion. Plaintiffs cannot claim that their § 1981 claims are founded on post-formation conduct while at the same time seeking to represent a class of applicants. Applicants who did not become employees of H&M obviously never formed an employment contract with H&M and thus cannot have been subject to post-formation conduct.

Plaintiffs Yates and Wills point to three actions that they assert constitute post-formation conduct and support their § 1981 claim: (1) the Defendants' actual collection of the money, (2)

being placed on payroll; and (3) the early termination practice committed by H&M. [31, at 6.] But the collection of the money cannot constitute post-formation conduct. The unknown individual with whom Wills spoke informed him that "if he provided him $2,000, he could get him a job at H&M." [1, ¶ 25.] That conversation did not create an employment contract. An employment contract in Illinois exists where a promise to pay wages is given in exchange for a promise to render services. *Vandevier v. Mulay Plastics, Inc.*, 482 N.E. 2d 377, 381 (Ill. Ct. App. 1985). There was no promise of wages by the unknown individual in exchange for a promise to render services by Wills. Rather, the unknown individual promised to secure Wills a job with H&M in exchange for Wills' payment of $2,000. The employment contract here did not form until Wills was hired and started working for H&M on September 24, 2014, after he already paid the unknown individual $2,000 with his application. [1, ¶¶ 25–27.] Indeed, even if the contract formed simultaneously with Wills' payment, it still would not constitute post-formation conduct.

Likewise, Lowe told Yates that Lowe could secure him a job at H&M and that "Turbyfill required a $1,000 payment to get the job." [1, ¶ 19.] This agreement did not form an employment contract. Rather, at most, the "agreement" between Yates and Lowe/Turbyfill constituted a condition precedent to the employment contract between H&M and Yates. *Carollo v. Irwin*, 959 N.E. 2d 77, 84 (Ill. Ct. App. 2011) ("A condition precedent is one that must be met before a contract becomes effective * * *."). Thus, under Plaintiffs' explanation of the agreement between Yates and Lowe, the employment contract between H&M and Yates could not and did not form until Yates paid the $1,000. Yates paid $500 along with his application for the job. [1, ¶ 20.] This act certainly occurred prior to the formation of the contract. Nonetheless, Plaintiffs point to the fact that $500 was due with the application and then $500 upon the start date but do not allege that Yates actually paid $500 when he started. [1, ¶ 21.] But even if the Court inferred that Yates paid

the $500 upon his start date—since he actually worked for H&M for some time—the payment still was a condition precedent and the employment contract did not actually form until the $1,000 was fully paid. In other words, under Plaintiffs' explanation of the deal, the formation of the employment contract could not have been completed until the money was collected in full. See *Credit Union 1 v. Carrasco*, 107 N.E. 3d 1021, 1026 (Ill. Ct. App. 2018) (stating that if there is a condition precedent, a contract is not effective until the condition occurs). In short, because the collection of both Wills' and Yates' payments occurred prior to formation of the employment contract, the four-year federal statute of limitations would not apply. See *Dandy*, 388 F.3d at 269 (stating that the § 1658 four-year statute of limitations applies to "conduct which took place *after* the formation of [the] employment contract") (emphasis added).

Plaintiffs next argue that their addition to H&M's payroll constituted a post-formation action that forms part of their claim. [31, at 6.] However, Plaintiffs' complaint lacks any mention or discussion of how H&M discriminated against them by placing them on its payroll. See generally [1]. As explained above, the crux of Plaintiffs' § 1981 claims is that they were required to pay to gain employment at H&M while similarly situated, non-African-Americans did not have to pay. [1, ¶¶ 1, 11, 28.] The Court has a difficult time picturing how being placed on a payroll system could somehow form the basis of Plaintiffs' employment discrimination claim. "Indeed, 'mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination.'" *EEOC v. North Gibson Sch. Corp.*, 266 F.3d 607, 618 (7th Cir. 2001) (quoting *Del. State College v. Ricks*, 449 U.S. 250, 257 (1980)). Plaintiffs' claim is that they had to pay to become eligible for employment at H&M while non-African Americans did not. [1, ¶¶ 11, 28.] The allegedly discriminatory act consisted of exacting the payment from Plaintiffs, not placing them on the payroll. In fact, under the allegations of the complaint, H&M

treated Wills and Yates in the same manner as all other employees by adding them to the payroll upon their hiring. H&M's addition of Wills and Yates to its payroll does not a constitute an improper post-formation action and cannot support their argument that the four-year statute of limitations applies.

Third, Plaintiffs point to their allegation that H&M terminated individuals who had paid for employment before they qualified for union rights. As noted above, from 2011 through sometime prior to September 2014, Plaintiffs claim that individuals at H&M engaged in a scheme whereby they would hire African-American men after they paid for the positions and then subsequently fire them one day shy of their 90th work day to prevent their qualification for union membership. [1, ¶¶ 11, 13.] However, there is no allegation that either named plaintiff was subject to this early termination. To the contrary, Yates worked for H&M well past the ninety-day mark and Wills still works at H&M. [1, ¶¶ 5, 6.] Yates and Wills, the only named plaintiffs in the suit, therefore are not members of the "early termination" class[3] and cannot use the "early termination" conduct to support a § 1981 claim based on post-formation conduct.[4]

The foregoing analysis shows that Plaintiffs cannot point to any post-formation conduct that plausibly forms a basis for their claim. Instead, the only conduct at issue arose prior to the formation of any employment contract between H&M and Wills or Yates. *Hunt v. Pers. Staffing Grp., LLC*, 2018 WL 1014513, (N.D. Ill. Feb. 22, 2018), does not support a different result. In

---

[3] Because they are not members of that class, Plaintiffs may not pursue claims on behalf of that class. See Fed. R. Civ. P. 23(a) ("Prerequisites. One or more members *of a class* may sue * * * as representative parties on behalf of all members * * *.") (emphasis added); see also *Wal-Mart Stores, Inc. v. Dukes*, 564, U.S. 338, 348 (2011) ("'[A] class representative must be part of the class' * * *.") (quoting *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)). If the claims of this class are to proceed, a plaintiff who actually suffered this early termination within the requisite statute of limitations will have to be named.

[4] Additionally, while not flagged by the parties, it appears that plaintiffs in the early termination class would have two disparate treatment claims: (1) that they were required to pay to receive an employment contract while those who were not African-American did not and (2) after they were hired, they were fired before they reached 90 days.

11

*Hunt*, plaintiffs alleged that the placement agency at which they applied for temporary jobs refused to assign them positions with the defendant companies per those companies' racially discriminatory practices. *Id.* at *6. In concluding that § 1658's four-year and not Illinois's two-year statute of limitations applied, Judge Tharp explained that the plaintiffs had sufficiently alleged facts to show that they had implicitly formed an employment relationship with the placement agency, and that the defendant companies' racially discriminatory policies interfered with that contract. *Id.* at *7. The court therefore concluded the complaint did state a claim for post-formation conduct and was subject to § 1658. Here, by contrast, no employment contract existed at all, until after the racially discriminatory conduct occurred, namely H&M's requirement that African-Americans pay before it would employ them. Absent a valid post-formation claim, Plaintiffs' claims fall under the pre-1991 amended version of § 1981 and are therefore subject to a two-year statute of limitations. See *Jones*, 541 U.S. at 382 (2004) (stating that § 1658's four-year statute of limitations only applies to laws enacted after 1990 and that causes of action that were available prior to 1990 are still subject to equivalent state law's statute of limitations); *Goodman*, 482 U.S. at 661-62 (1987) (ruling that § 1981 claims are subject to the state law's statute of limitations for personal injury); see also 735 ILCS 5/13-202 ("Actions for damages for an injury to the person * * * shall be commenced within 2 years [] after the cause of action accrued * * *.").

Yates' claim accrued, at the latest, when he made his alleged payment in December 2014. See *Bishop v. Gainer*, 272 F.3d 1009, 1014 (7th Cir. 2001) (noting that civil rights claims accrue when the plaintiff becomes aware of his injury). Likewise, Wills' claim accrued when he made his payments sometime prior to September 2014. [1, ¶¶ 20, 25-26.] Plaintiffs filed their complaint on August 31, 2018, see generally [1], well beyond the two-year period they had to file their complaint. Thus, the Court must grant H&M's motion and dismiss Count I as barred by the statute

of limitations. The dismissal is with prejudice as to Yates and Wills individually because any amendment would be futile. See *Tate v. SCR Med. Transp.*, 809 F.3d 343, 346 (7th Cir. 2015) ("[T]he court should grant leave to amend after dismissal of the first complaint 'unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted.'") (quoting *Barry Aviation Inc. v. Land O'Lakes Municipal Airport Commission*, 377 F.3d 682, 687 (7th Cir. 2004)).

**B.    Count II**

H&M also argues that Count II is barred by statute of limitations. [9, at 3.] Because § 1985, like § 1981, does not contain a statute of limitations and § 1658 does not apply, federal courts borrow the analogous state law statute of limitations. *Berger v. AXA Network LLC*, 459 F.3d 804, 808 (7th Cir. 2006). The Seventh Circuit applies Illinois' two-year statute of limitations for personal injury claims to § 1985 claims. See *Ross v. Illinois*, 48 Fed. Appx. 200, 202 (7th Cir. 2002); *Wilson v. Giesen*, 956 F.2d 738, 741 n.4 (7th Cir. 1992); see also 735 ILCS 5/13-202. As with Count I, Plaintiffs have not provided any allegations that the conspiracy persisted within two years prior to August 31, 2018, when the complaint was first filed. See generally [1]. Indeed, the last conspiracy-related event described by the complaint is Yates' payment of $500 to Lowe in December 2014. [1, ¶ 20.] Nor have Plaintiffs provided any argument in support of the notions that the Court may plausibly infer that (1) the conspiracy continued into the limitations period or (2) Plaintiffs' claims were tolled, without any additional facts. See, e.g., *Lakin v. Skaletsky*, 2008 WL 4662846, at *4 (N.D. Ill. Oct. 15, 2008), aff'd, 327 F. App'x 636 (7th Cir. 2009) (dismissing claim as time-barred where plaintiff did not plead that the conspiracy continued beyond his termination). Especially given that (1) a federal civil rights claim accrues when the plaintiff becomes aware of his injury, *Bishop*, 272 F.3d at 1014, and (2) Plaintiffs unequivocally knew of

13

their injury in 2014, the Court cannot conclude that the conspiracy claims are timely. Consequently, the Court must dismiss Count II as barred by the statute of limitations as well.[5] However, that dismissal is without prejudice.

C.     **Count III**

Finally, H&M argues that Plaintiffs' 42 U.S.C. § 1986 claim must be dismissed because Plaintiffs have not yet pled facts to state a viable § 1985 claim.  [9, at 5.]  Section 1986 provides in relevant part that "[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in the preceding section [42 U.S.C. 1985] are about to committed * * *." 42 U.S.C. 1986.  Because a § 1986 claim predicates liability on the failure to prevent a § 1985 conspiracy from occurring, if there is no § 1985 claim, there can be no § 1986 claim.  *Bell v. Milwaukee*, 746 F.2d 1205, 1233 (7th Cir. 1984) ("A finding of a Section 1985 conspiracy is a necessary prerequisite to a finding of liability under Section 1986.") (citing *Williams v. St. Joseph Hospital*, 629 F.2d 448, 451-52 (7th Cir. 1980); *Copeland v. Northwestern Mem. Hosp.*, 964 F. Supp. 1225, 1241 (N.D. Ill. 1997) ("A section 1986 claim is strictly derivative of a section 1985 claim; if no section 1985 claim exists, no section 1986 claim exists.").  Plaintiffs' have not yet pled facts to state a timely § 1985 claim, thus the Court must dismiss Count III as well; though again, without prejudice.[6]

---

[5] Because the Court concludes that Count II is barred by the applicable statute of limitations, the Court need not address Defendant's other argument that Plaintiffs' § 1985 claim is preempted by Title VII.

[6] Importantly, 42 U.S.C. § 1986 carries its own statute of limitations of one year.  Although Defendants did not raise this argument—and thus the Court does not ground its decision on this basis—the Court notes Plaintiffs' § 1986 claim appears untimely as well given Plaintiffs have not alleged any facts that suggest the unnamed Officers and Directors of H&M (1) had knowledge of an extant conspiracy to deprive individuals of equal rights under the law, and (2) failed to act to stop that conspiracy, within one year of the filing of this lawsuit.

**IV.** **Conclusion**

For the reasons explained above, Defendants' partial motion to dismiss [9] Counts II and III as well as its supplemental motion to dismiss [17] Count I are granted. Count I is dismissed with prejudice as to Yates and Wills. Counts II and III are dismissed without prejudice. Purported-class counsel is given until August 16, 2019 to file a motion to substitute plaintiffs as to Count I and/or an amended complaint as to all counts consistent with this opinion. The case is set for further status on August 21, 2019 at 9:00 a.m.

Dated: July 9, 2019

Robert M. Dow, Jr.
United States District Judge